IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WALTER HARGROVE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | C.A. NO. 4:10-cv-2658 |
| | § | (JURY DEMANDED) |
| CHECK RESOLUTION SERVICE, | § | |
| INC., | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, WALTER HARGROVE, (hereinafter referred to as the "Plaintiff"), Plaintiff in the above styled case, and makes this his Plaintiff's Original Complaint against CHECK RESOLUTION SERVICE, INC. (hereinafter referred to as the "Defendant") and for cause of action would show as follows:

### I.

### Parties

1. Plaintiff is an individual residing in Houston, Harris County, Texas.

2. Defendant Check Resolution Service, Inc. is a New York corporation doing business in the State of Texas and may be served by serving Lorraine Cortés-Vázquez, Secretary of State for the State of New York, or any authorized person at the Secretary of State for the State of New York, at One Commerce

Plaza, 99 Washington Avenue, Albany, NY 12231.

## II.

### Jurisdiction and Venue

3. This Court has jurisdiction under 28 U.S.C. § 1331 in that this civil action arises under the laws of the United States, in particular under the provisions of the federal Fair Debt Collection Practices Act codified at 15 U.S.C. §§ 1692, *et seq.*

4. The Defendant is also liable to the Plaintiff pursuant to the laws of the State of Texas, which claims may be brought under the supplemental and ancillary jurisdiction of this Court under 28 U.S.C. § 1367(a).

5. This Court has venue under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas, Houston Division.

6. This Court has personal jurisdiction over the Defendant, because it has established minimum contacts in the State of Texas.  The Defendant engaged in collection actions in the State of Texas including telephone calls to Texas residents to collect debts.  The debt at issue and the collection calls regarding the debt at issue all arose from conduct in the State of Texas.  Thus, there is both general and specific jurisdiction over the Defendant.

## III.

## Background Facts

7.  Plaintiff obtained a payday loan for use in paying personal household bills.   The payday lender assigned the account to Defendant for collection. Defendant is a debt collector that uses the United States mail and interstate telephone communications to collect delinquent consumer debts on behalf of creditors.

8.  In late June of 2010, a representative of the Defendant who identified himself as "Jack Burton" telephoned the Plaintiff and left a message on his voicemail stating that he had received paperwork in his office for service of summons for the Plaintiff to appear in court on a "bad check."   Defendant's representative continued, stating that they would be sending the summons out to the Plaintiff's residence and place of employment.   The Defendant said that it had extended the Plaintiff one last chance to resolve the "bad check" with "the firm" before they were forced to file paperwork against the Plaintiff.   The Defendant's representative left a toll free phone number to call and left a "case number" for the Plaintiff to reference when he called.   The Defendant's representative then stated in the message that a failure to respond will result in

3

the paperwork being forwarded out for immediate action.  The Defendant's representative closed the call saying simply – "good luck."

9.  Shortly after leaving that message, the Defendant's representative called Plaintiff again and identified himself as being with "Check Resolution's Assets Investigation Department."  He stated that he had received in his office a service of summons for the Plaintiff to appear in court on a "bad check" and that the Plaintiff needed to contact his office immediately. Again, the Defendant's representative told the Plaintiff that the Defendant had given the Plaintiff one last chance to resolve this "bad check" in their office, left a "case number," and said that a failure to respond will result in service of the summons at the Plaintiff's residence and place of employment. The Defendant's representative closed this message with the phrase – "good luck."

10. The Defendant's representatives called the Plaintiff two more times in July making these same false threats and representations.

## IV.

### Causes of Action

### A. Violations of the FDCPA

11. The Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3). Defendant is a debt collector as defined by 15 U.S.C. § 1692a(6).

12. Defendant violated 15 U.S.C. § 1692c(b) by communicating with a third party without the Plaintiff's consent.  Defendant did this in its voicemails left on the Plaintiff's phone.

13. Defendant made false representations of the character, amount, and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).  Specifically, Defendant represented that the Plaintiff had written a "bad check," that there was a summons for the Plaintiff to appear in Court on the "bad check," that a failure to respond would result in the paperwork being filed and served on the Plaintiff at his home and workplace, and that there was a "case number" for the matter. This falsely characterized the matter a criminal matter subject to criminal prosecution and falsely characterized the legal status of the debt as already filed in some Court when it was not.

14. Defendant made false representations of services rendered or compensation which may be lawfully received by it for the collection of a debt in violation of 15 U.S.C. § 1692e(2)(B).  Specifically, Defendant represented itself as engaged in legal services, including but not limited to services such as filing criminal charges or civil suits for its client.

15. Defendant made false representations or implications that its communications with the Plaintiff were communications from attorneys in violation of 15 U.S.C. § 1692e(3).

16. Defendant represented that nonpayment of the debt had already resulted in a complaint being filed against the Plaintiff and that the Plaintiff had written its client a "bad check."  This implied that nonpayment of the debt would result in the arrest or imprisonment of the Plaintiff in violation of 15 U.S.C. § 1692e(4).

17. Defendant threatened action against the Plaintiff that could not legally be taken by Defendant and was not intended to be taken by Defendant in violation of 15 U.S.C. § 1692e(5).  In particular, Defendant threatened to take the Plaintiff to court on a complaint it had already filed against the Plaintiff threatened to have a summons for a court appearance served on the Plaintiff at home and at work.  This also constituted an implied threat of arrest and criminal prosecution.  Those threats were false, not intended, and impossible.

18. Defendant falsely represented to the Plaintiff that he had committed a crime in order to disgrace the Plaintiff in violation of 15 U.S.C. § 1692e(7). Specifically, Defendant represented that the Plaintiff had written a "bad check," that a complaint had been filed against the Plaintiff, and that if Plaintiff failed to

respond immediately, paperwork would be filed against him and he would be served with a summons to appear in court.

19. Defendant used false representations or deceptive means to collect or attempt to collect a debt. In particular, Defendant falsely represented that it was a law firm, that the Plaintiff had written its client a "bad check," that a complaint had already been filed against the Plaintiff, and that if Plaintiff failed to respond immediately, paperwork would be filed against him and he would be served with a summons to appear in court. This conduct constitutes a violation of 15 U.S.C. § 1692e(10).

20. Defendant violated 15 U.S.C. § 1692g(a) by failing to send the Plaintiff the required written validation notice within five days after the initial communication with the Plaintiff.

21. Defendant's conduct described above was the direct cause of actual damages to the Plaintiff, for which he now sues.

22. As a result of Defendant's violations, the Plaintiff is entitled to an award of statutory damages pursuant to 15 U.S.C. § 1692k(a), for which he now sues.

23. The Plaintiff would further show this Court that recovery of the costs of this action, including reasonable attorney's fees, are authorized, made, and

provided for under and according to the provisions of 15 U.S.C. § 1692k(a)(3), and

the Plaintiff seeks them in this action.

## B. Texas Finance Code Claims

24. The Defendant's conduct constitutes violations of the Texas Collection

Practices Act, codified in the Texas Finance Code.  The Plaintiff is a consumer as

that term is defined by Tex. Fin. Code, § 392.001(1).   The Defendant is a debt

collector as that term is defined by Tex. Fin. Code, § 392.001(6).

25. Defendant violated Tex. Fin. Code, § 392.101 by engaging in debt

collection in the State of Texas without obtaining a surety bond in the amount of

$10,000.00 issued by a surety company authorized to do business in the State of

Texas in favor of anyone who is damaged by a violation of Chapter 392 of the

Texas Finance Code and in favor of the State of Texas for the benefit of anyone

who is damaged by a violation of Chapter 392 of the Texas Finance Code, and

failing to file such bond with the Secretary of State for the State of Texas.

26.  The Plaintiff seeks not less than $100.00 from Defendant for each of its

violations of Chapter 392 of the Texas Finance Code, pursuant to Tex. Fin. Code, §

392.403(e).

27. The Defendant's actions and conduct constitute violations of Chapter

392 of the Texas Finance Code, as follows:

(a) Accusing falsely or threatening to accuse falsely a person of a crime in violation of Tex. Fin. Code, § 392.301(2).

(b) Threatening that the Plaintiff will be arrested for nonpayment of a consumer debt without proper court proceedings in violation of Tex. Fin. Code, § 392.301(5).

(c) Threatening to take an action prohibited by law in violation of Tex. Fin. Code, § 392.301(a)(8).

(d) Misrepresenting the character, extent, or amount of the Plaintiff's consumer debt, or misrepresenting the Plaintiff's consumer debt's status in a judicial or governmental proceeding in violation of Tex. Fin. Code, § 392.304(a)(8).

(e) Representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business in violation of Tex. Fin. Code, § 392.304(a)(14).

(f) Using a communication that purports to be from an attorney or law firm when in fact it is not in violation of Tex. Fin. Code, § 392.304(a)(16).

(g) Representing that a consumer debt is being collected by an attorney when in fact it is not in violation of Tex. Fin. Code, § 392.304(a)(17).

(h) Using any false representation or deceptive act in connection with the collection of a debt in violation of Tex. Fin. Code, § 392.304(a)(19).

28. As a direct and proximate result of the acts of the Defendant, the Plaintiff has suffered actual damages, which he now seeks.

29. The Plaintiff seeks injunctive relief pursuant to Tex. Fin. Code, § 392.403(a)(1) against the Defendant to prevent or retrain it from continuing to communicate with consumers as if they are attorneys filing complaints and serving

summonses against consumers.

30. The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on her behalf. The Plaintiff seeks an award of his costs of this action, including but not limited to reasonable attorneys' fees pursuant to Tex. Fin. Code, § 392.403(b).

## C. Violations of the Texas DTPA

31. Under Tex. Fin. Code, § 392.404(a), a violation of Chapter 392 of the Texas Finance Code is a deceptive trade practice under Subchapter E, Chapter 17, Texas Business & Commerce Code, and is actionable under that subchapter. FAC committed violations of Chapter 392 of the Texas Finance Code, and thus committed violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code, § 17.50.

32. The Defendant's conduct was the direct cause of damages to the Plaintiff, for which the Plaintiff now sues.

33. The Defendant's conduct was committed knowingly and intentionally, and the court should award additional damages pursuant to Tex. Bus. & Comm. Code, § 17.50(b)(1) and (h).

34. The Plaintiff has been forced to hire the attorneys whose names appear below to pursue those claims on his behalf. The Plaintiff seeks an award of his

costs of this action, including but not limited to court costs and reasonable and necessary attorneys' fees pursuant to Tex. Bus. & Comm. Code, § 17.50(d).

## V.

## <u>Jury Demand</u>

35. The Plaintiff requests a trial by jury on all issues.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, WALTER HARGROVE, prays that Defendant, CHECK RESOLUTION SERVICE, INC., be cited to appear and answer, and that upon final trial of this matter, that judgment be entered against the Defendant as follows:

1.    Actual damages;

2.    Additional and exemplary damages;

3.    Statutory damages of not less than $100.00 per violation of Chapter 392 of the Texas Finance Code;

4.    Statutory damages under 15 U.S.C. § 1692k not to exceed $1,000.00;

5.    Costs of the action, including but not limited to reasonable attorney's fees and expenses pursuant to 15 U.S.C. § 1692k and Tex. Fin. Code, § 392.403(b), and Tex. Bus. & Comm. Code, § 17.50(d);

6.    Prejudgment and postjudgment interest at the maximum rate allowed by law;

7.    Costs of court; and

8.    Such other and further relief that may be just and proper.

Respectfully submitted,

**WAUSON ♦ PROBUS**


By:\_\_\_/s/ Matthew B. Probus\_\_\_
    **Matthew B. Probus**
    TBA# 16341200

One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 telephone
(281) 242-0306 facsimile

*ATTORNEYS FOR PLAINTIFF,*
*WALTER HARGROVE*

12